NO. 07-07-0453-CR, 07-07-0454-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

MAY 19, 2010
_____

LARRY SCROGGS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

ALANA LYNN GARIEPY, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE
_____

FROM THE 69TH DISTRICT COURT OF MOORE COUNTY;

NO. 3989; 3990; HONORABLE RON ENNS, JUDGE
_____

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.

**OPINION**

The motions for rehearing of appellants Larry Scroggs and Alana Gariepy are denied. We withdraw our opinion and judgments of February 23, 2010, and substitute the following.

In these two cases, appellants were indicted for the offenses of aggravated kidnapping[1] and two counts of burglary of a habitation.[2] They were tried together, and convicted of the indicted offenses by a jury which assessed probated sentences and fines as punishment. Appellants challenge their convictions and sentences through seven identical issues.

We will reverse and render judgment vacating appellants' convictions for burglary of a habitation predicated on a felony (aggravated kidnapping); modify the judgments as specified herein; remand in part for recalculation of total fees and monthly fees due from appellants; and otherwise affirm.

Because this case presents a protracted factual narrative and appellants challenge on appeal the legal and factual sufficiency of the evidence supporting their convictions under each count of their indictments, we will set forth the background facts below in conjunction with our review of the sufficiency of the evidence issue.

Discussion

Legal and Factual Sufficiency of the Evidence

By their second issue, appellants argue the evidence is legally and factually insufficient to support their convictions for aggravated kidnapping and burglary. We measure the legal and factual sufficiency of the evidence against the elements of the

---

[1] Tex. Penal Code Ann. § 20.04(b) (Vernon 2003).

[2] Tex. Penal Code Ann. § 30.02(a)(3) (Vernon 2003) (attempt or commission of assault and a felony (kidnapping)).

offense as defined by a hypothetically correct jury charge. *See Wooley v. State,* 273 S.W.3d 260, 268 (Tex.Crim.App. 2008) (holding that factual sufficiency, like legal sufficiency, should be measured "by the elements of the offense as defined by a hypothetically correct jury charge"); *Malik v. State,* 953 S.W.2d 234, 240 (Tex.Crim.App. 1997).

In conducting a legal sufficiency review, we view the evidence in the light most favorable to the verdict to determine whether a rational fact finder could have found each element of the offense beyond a reasonable doubt. *Swearingen v. State,* 101 S.W.3d 89, 95 (Tex.Crim.App. 2003); *Conner v. State,* 67 S.W.3d 192, 197 (Tex.Crim.App. 2001) (*citing Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). If, based on all the evidence, a reasonably-minded jury must necessarily entertain a reasonable doubt of the defendant's guilt, due process requires that we reverse and order a judgment of acquittal. *Swearingen,* 101 S.W.3d at 95, (*citing Narvaiz v. State,* 840 S.W.2d 415, 423 (Tex.Crim.App. 1992), *cert. denied,* 507 U.S. 975, 113 S. Ct. 1422, 122 L. Ed. 2d 791 (1993)).

A factual sufficiency review of the evidence is "barely distinguishable" from the legal sufficiency review under *Jackson v. Virginia. Marshall v. State,* 210 S.W.3d 618, 625 (Tex.Crim.App. 2006). A factual sufficiency review considers whether the evidence supporting guilt, though legally sufficient, is so weak that the jury's verdict seems clearly wrong and manifestly unjust, or evidence contrary to the verdict is such that the jury's verdict is against the great weight and preponderance of the evidence. *Id.*; *Watson v. State,* 204 S.W.3d 404, 414-15 (Tex.Crim.App. 2006); *Johnson v. State,* 23 S.W.3d 1, 11 (Tex.Crim.App. 2000). In a factual sufficiency review, we again consider all the

evidence, but now in a neutral light.  *Marshall,* 210 S.W.3d at 625; *Watson,* 204 S.W.3d at 414.  Although an appellate court's authority to review factual sufficiency permits the court to disagree with the fact finder's determinations, even to a limited degree those concerning the weight and credibility of the evidence, the appellate court must accord them due deference.  *Marshall,* 210 S.W.3d at 625; *Johnson,* 23 S.W.3d at 9.  When there is a conflict in the evidence, to find it factually insufficient we must first be able to say, with some objective basis in the record, that the great weight and preponderance of all the evidence contradicts the jury's verdict.  *Watson,* 204 S.W.3d at 417.

A person commits the offense of aggravated kidnapping if the person intentionally or knowingly abducts another person and uses or exhibits a deadly weapon during the commission of the offense.  Tex. Penal Code Ann. § 20.04(b) (Vernon 2003); *Hines v. State,* 75 S.W.3d 444, 446 (Tex.Crim.App. 2002).  "Abduct" includes restraining a person with intent to prevent her liberation by using or threatening to use deadly force. Tex. Penal Code Ann. § 20.01(2) (Vernon 2003).  "Restrain" means to restrict a person's movements without consent, so as to interfere substantially with the person's liberty, by moving the person from one place to another or by confining the person. Tex. Penal Code Ann. § 20.01(1) (Vernon 2003).  Restraint is without consent if it is accomplished by force, intimidation, or deception.  Tex. Penal Code Ann. § 20.01(1)(A) (Vernon 2003).  No specific time requirement exists for determining whether a restraint has taken place.  *Hines v. State,* 75 S.W.3d 444, 447-48 (Tex.Crim.App. 2002). "Deadly force" is defined as "a force that is intended or known by the actor to cause, or in the manner of its use or intended use is capable of causing, death or serious bodily injury." *Holmes v. State,* 830 S.W.2d 263, 265 (Tex.App.–Texarkana 1992, no pet.).

4

A person commits the offense of burglary if, without the effective consent of the owner, the person:

(1) enters a habitation, or a building (or any portion of a building) not then open to the public, with intent to commit a felony, theft, or an assault; or

(2) remains concealed, with intent to commit a felony, theft, or an assault, in a building or habitation; or

(3) enters a building or habitation and commits or attempts to commit a felony, theft, or an assault.

*See* Tex. Penal Code Ann. § 30.02 (Vernon 2003).

Factual Background

Testimony showed that Monique Graves and Kevin Hamilton lived together in a Dumas, Texas, apartment. They abused the pain reliever Oxycontin to the point of addiction. Graves purchased the drug from appellant Gariepy. Following the death of her mother, Graves looked to Gariepy as a friend and mentor. When Graves became pregnant, Gariepy supported her effort to cease drug abuse. According to appellant Scroggs' brief, he and Gariepy were close friends.

On December 26, 2006, about mid-day, Graves was dressing in the bedroom of her apartment. Her pregnancy was near term. Suddenly, Scroggs forced open the front door, breaking the lock chain and door frame. He stood in the door while Gariepy entered the bedroom. She was angry and accused Graves and Hamilton of breaking into her home and stealing a bottle of Oxycontin.

Gariepy pushed Graves onto the bed, grabbed her hair, and began slapping her. Graves momentarily saw Scroggs in her bedroom doorway. Gariepy pulled hair from

5

Graves' head and struck her about the head, cutting her lip and leaving marks on her ears and neck. Gariepy demanded that Graves dress and accompany her to Hamilton's workplace in Cactus, Texas, and then to a hospital for a blood test. The blood test was to prove Graves' denial she was taking Oxycontin. Gariepy took Graves' keys and cell phone. Graves voluntarily walked from the apartment into the common area of the apartment complex, hoping a bystander would see the situation and call police. From the parking lot, Graves noticed a neighbor doing yard work. She believed he heard her yelling for Gariepy to stop, but did not specifically call to him for help.

Gariepy remained angry in the parking lot and at times struck Graves. According to Graves, Gariepy screamed that Graves knew "that was her only livelihood." Scroggs stood at the driver's door of his car and watched. Gariepy grabbed Graves by the hair and throat and forced her into the backseat of Scroggs' car. The vehicle was equipped with front bucket seats. As Gariepy forced her into the car, Graves noticed Scroggs had a handgun. Scroggs pointed the gun toward the backseat.

Jimmy Donoho lived in a house behind the apartment complex where Graves lived. Donoho testified he was doing yard work on that day and saw two unidentified women outside, at the apartment complex. One woman had her hands on the other woman as the other screamed, "Please, please stop, stop, please, I didn't do anything wrong."

On cross-examination, Donoho said he saw the same women three times at the apartments over a period of about ten minutes. On the last observation, he also saw a man at an apartment door yelling, "That's the way you want it, that's the way you're

6

going to get it." Donoho had concerns but chose not to call police as he wished not to become involved in the situation.

With Graves in the backseat and Gariepy in the front passenger seat, Scroggs drove toward Hamilton's workplace in Cactus. Along the way, Gariepy called Hamilton on a cell phone, accusing him of thievery and inquiring if he knew how much money he owed her. Hamilton testified that as they spoke he could hear Graves in the background saying, "No, no, no." He opined she sounded frightened. Gariepy also told Hamilton that Graves would "be around long enough to have that baby."

Hamilton left work in a company pickup and pulled to the side of the road when he saw Scroggs' car approaching. As Scroggs' car slowed to a stop by Hamilton's pickup, Graves placed her hand on the car's inside door handle. Scroggs told her not to "try anything funny" and Gariepy grabbed Graves and pulled her forward. Hamilton testified he observed from his vehicle Scroggs pointing a gun at Graves. Scroggs gestured with the gun as he spoke. According to Graves, Scroggs pointed the gun at her when she placed her hand on the door handle as the vehicle stopped.

As they spoke beside the highway, Scroggs and Gariepy accused Hamilton of theft. They also conveyed their intention of obtaining a blood test for Graves at the hospital. Scroggs and Gariepy, with Graves remaining in the backseat, then drove back to Graves' apartment. Hamilton followed. At the apartment, Hamilton and Gariepy went inside while Graves and Scroggs remained outside. According to Graves and Hamilton, Scroggs held the gun concealed by a "blue sock hat." Hamilton testified that Graves was "terrified" and mouthed to him, "'Help me, help me.'"

7

Gariepy then directed the parties to the hospital and allowed Graves to ride with Hamilton while she and Scroggs followed. As they drove from the apartment complex, Hamilton called 911 on his cell phone. According to Hamilton, he placed the phone on his lap in fear Scroggs and Gariepy would see him calling.

In response to the call, Dumas police officer Tommy Gonzales arrived at the hospital and was soon joined by officer Jason Wilkins. According to Gonzales, Hamilton was crying and whispered Scroggs had a gun. Gonzales described Graves as shaking "severely" and crying. He observed she had a "swollen and busted lip." After ordering Scroggs from his car at gunpoint, Gonzales located a gun on the driver's seat. Wilkins arrived and took Scroggs into custody. Gonzales went to Graves' apartment and observed a shoe print on the door by the knob and the frame cracked and damaged.

Gariepy testified at trial. She averred a close relationship developed between Graves and her after the death of Graves' mother. On December 25, Gariepy's brother, James West, briefly visited her and apparently left behind a pill bottle containing Oxycontin tablets. Graves thereafter visited Gariepy before they left simultaneously. Gariepy believed Graves saw the pill bottle during the visit. Several hours later, when she returned from a family Christmas gathering, Gariepy saw signs of a break-in at her home. The only item missing was West's bottle of Oxycontin. Gariepy was not able to contact Graves that day.

Gariepy testified that the next day, Scroggs drove her to Graves' apartment in Dumas from Gariepy's home in Fritch, Texas. Graves would not answer the door. At Gariepy's command, Scroggs pushed the door open and then stepped back outside.

8

Gariepy said she and Graves argued inside the apartment. Gariepy pushed Graves on the bed and "thumped" her nose, perhaps more than once. Graves eventually confessed that Hamilton broke into Gariepy's home and took the Oxycontin. Graves agreed to a blood test. Gariepy required that Graves ride with Scroggs and her. Gariepy forced Graves into Scroggs' car by grabbing her hair. The three then set out for Hamilton's workplace. Gariepy denied striking Graves while they drove to Hamilton's workplace in Cactus but admitted speaking "severely" with her. As they stopped to speak with Hamilton, Scroggs told Graves to remove her hand from the door handle and Gariepy grabbed Graves and pulled her forward. Scroggs had a handgun in the car but, according to Gariepy, did not point it at Graves. Gariepy demanded the pills and Hamilton acknowledged they were at the apartment. Hamilton then followed Scroggs back to the apartment where Hamilton retrieved the pills. Graves rode with Hamilton to the hospital. Gariepy left the bottle of Oxycontin in Scroggs' car which was impounded by police. The bottle of pills was not confiscated as evidence.

Gariepy testified that she did not call Child Protective Services (CPS) after suspecting Graves was using Oxycontin while pregnant because she wanted to investigate and allow Graves the opportunity to prove her innocence through a blood test.

Through cross-examination, counsel for appellants developed that in their statements to police Graves and Hamilton did not mention stopping at the apartment before going to the hospital. According to the statements, after a second roadside stop Graves rode the rest of the way to the hospital with Hamilton.

9

Aggravated Kidnapping

We reject appellants' challenge to the sufficiency of evidence supporting their conviction for aggravated kidnapping. Appellants specifically challenge the sufficiency of evidence proving their *mens rea* to commit aggravated kidnapping. A kidnapping becomes a completed offense when a restraint is accomplished and evidence shows the actor manifested the specific intent to prevent the victim's liberation by secreting the victim or using or threatening use of deadly force. *Mason v. State,* 905 S.W.2d 570, 575 (Tex.Crim.App. 1995). The use or threatened use of deadly force is part of the *mens rea* of kidnapping and not the *actus reus. Id.*

Appellants also argue the evidence was insufficient to prove they restrained Graves by moving her from one place to another. While it appears undisputed that Graves agreed to have a blood test at the hospital, it is undisputed also that she did not consent to accompany appellants to Hamilton's workplace in Cactus or to ride in Scroggs' car. In the apartment, Gariepy physically prevented Graves from calling 911 by pulling the cell phone from her hand. She retained Graves' cell phone, took her keys, and forced her into the backseat of Scroggs' car. Scroggs had a handgun in the car and according to Graves pointed it at her. Gariepy physically prevented Graves from exiting the vehicle by grabbing her.

Burglary of a Habitation

We also reject appellants' argument the evidence was legally and factually insufficient to support the jury's verdict of burglary of a habitation under count two of the indictment.

10

Count two alleged appellants entered Graves' apartment without consent and attempted to or did assault her.[3] The basis of appellants' complaint here is the evidence was not sufficient to prove beyond a reasonable doubt that an assault of Graves was intended before appellants entered the apartment. Proof of this fact, however, was not required for appellants' conviction under the indictment. Rather, the State had but to show that after entering the apartment without Graves' consent, appellants attempted to or did assault Graves. *See* Tex. Penal Code Ann. § 30.02(a)(3) (Vernon 2003).

Viewed in the light most favorable to the verdict, the combined force of the evidence supporting appellants' convictions for aggravated kidnapping and burglary under counts one and two of the indictments would have allowed a rational juror to find beyond a reasonable doubt the legal elements of the offenses alleged. Affording due deference to the jury's credibility determinations, and considering the evidence in a neutral light, the jury was rationally justified in finding beyond a reasonable doubt that appellants committed aggravated kidnapping and burglary of a habitation. Because the evidence was legally and factually sufficient, we overrule appellants' second issue.[4]

---

[3] *See* Tex. Penal Code Ann. § 30.02(a)(3) (Vernon 2003). A person commits assault if the person *inter alia* "intentionally, knowingly, or recklessly causes bodily injury to another, including the person's spouse." *See* Tex. Penal Code Ann. § 22.01(a)(1) (Vernon Supp. 2009).

[4] Because of our disposition of this appeal, discussion of the legal and factual sufficiency of the evidence supporting appellants' convictions under count three of the indictment, burglary predicated on a felony (aggravated kidnapping), is unnecessary. *See* Tex. R. App. P. 47.1.

11

Immunity: Motion for Instructed Verdict and Jury Instruction

In their first issue, appellants argue the trial court erred by denying their motions for instructed verdict and to dismiss grounded on the affirmative defense of immunity.[5] Within this issue, they further argue the trial court erred by denying a requested jury instruction on immunity. Although the issue is multifarious, we are able to follow the argument and will address the complaints asserted. *See* Tex. R. App. P. 38.9.

Because appellants bore the burden of proof of their immunity defense by the preponderance of the evidence standard, we follow the standard of review applied in civil cases for review of denial of an instructed verdict. *See Watson,* 204 S.W.3d at 436-37 (Cochran, J., dissenting). A trial court's denial of a motion for instructed verdict may be reversed if the evidence conclusively proves a fact establishing a party's right to judgment as a matter of law, and there is no evidence to the contrary. *See McCarley v. Hopkins,* 687 S.W.2d 510, 512 (Tex.App.–Houston [1st Dist.] 1985, no writ). On review of a denial for instructed verdict, we consider all the evidence in the light most favorable to the non-movant and disregard all contrary evidence. *Harris County v. Demny,* 886 S.W.2d 330, 333 (Tex.App.–Houston [1st Dist.] 1994, writ denied). All reasonable inferences are resolved in favor of the non-movant. *Id.* If the record contains any conflicting evidence of probative value on any theory of recovery, the question is one of fact for resolution by the jury. *Cliffs Drilling Co. v. Burrows,* 930 S.W.2d 709, 712 (Tex.App.–Houston [1st Dist.] 1996, no writ).

---

[5] Appellants filed a pre-trial motion to dismiss which was denied. They re-urged this motion at trial in the course of making an oral motion for instructed verdict. The basis of their argument is the evidence was conclusive that under Family Code § 261.106 they were immune from criminal prosecution for the conduct giving rise to the indicted offenses. Tex. Fam. Code Ann. § 261.106 (Vernon 2008).

Appellants argue that Graves was "endangering and abusing or neglecting her unborn child" by consuming Oxycontin while pregnant. Rather than immediately report this belief to CPS or to a law enforcement agency, they decided to compel a blood test of Graves and then decide whether to report abuse or neglect.

According to appellants, Texas Family Code § 261.106[6] grants them immunity from the conduct giving rise to the indicted offenses because they were reporting and assisting in the investigation of a report of alleged child abuse or neglect.[7] Appellants' contentions are without merit.

Appellants' assertions of immunity are defeated by the plain language of the statutes to which they refer.[8] Reports of suspected child abuse or neglect under subchapter B of chapter 261 of the Family Code are made to law enforcement or other designated state agencies. *See* Tex. Fam. Code Ann. § 261.101(a) (Vernon 2008) (requiring immediate report "as provided by this subchapter"); § 261.103 (with exceptions not relevant here, "a report shall be made to" listed agencies).

---

[6] In relevant part this section provides:

A person acting in good faith who reports or assists in the investigation of a report of alleged child abuse or neglect or who testifies or otherwise participates in a judicial proceeding arising from a report, petition, or investigation of alleged child abuse or neglect is immune from civil or criminal liability that might otherwise be incurred or imposed.

Tex. Fam. Code Ann. § 261.106(a) (Vernon 2008).

[7] The State argues the "child abuse or neglect" referred to in Family Code Chapter 261 does not refer to unborn children so § 261.106 has no application in this case. We do not reach the State's argument.

[8] Courts interpret a statute in accordance with the plain meaning of its words unless they are ambiguous or the plain meaning leads to absurd results. *Mosley v. State,* 983 S.W.2d 249, 256 (Tex.Crim.App. 1998).

Investigations of such reports, under subchapter D of chapter 261, are conducted by designated state agencies. *See* Tex. Fam. Code Ann. § 261.301(a) (Vernon 2008) (requiring investigation of reports by agency with assistance from law enforcement).

Scroggs asserts a "report" was made when another person, apparently Gariepy, related facts to him creating in his mind a suspicion of abuse or neglect. Thus appellants' subsequent conduct toward Graves was an "investigation" of the report of Gariepy. But, as noted, a report under chapter 261 is made to an agency designated by § 261.103, not to a private individual. The investigation of a report under chapter 261 follows the report, it does not precede the report. And reports are investigated under chapter 261 by agencies, not private individuals.

Testimony showed appellants related their concerns for the health of Graves' unborn child to the officers who arrested them at the hospital. But their after-the-fact "reporting" does not immunize them from liability for their criminal acts. Section 261.106 plainly and unambiguously grants immunity to those participating in the investigation of a report but offers no protection for those choosing to forego its requirements. Assuming, without deciding, that the immunity provided by § 261.106 would extend to the felonious actions shown by the evidence here,[9] the evidence did not conclusively establish appellants' entitlement to immunity. The trial court did not err by denying their motion for instructed verdict.

---

[9] *See State v. Harrod*, 81 S.W.3d 904 (Tex.App.—Dallas 2002, pet. refused) (finding limits to statute's grant of immunity).

14

Failure to Instruct on Immunity Defense

Appellants next argue that if immunity was not established as a matter of law the trial court erred by refusing a requested jury instruction on immunity. Solely for this discussion, but without so deciding, we assume the propriety of submitting a § 261.106 immunity instruction when raised by the evidence in a criminal case.

We review the trial court's denial of a requested jury instruction for abuse of discretion. *See Threadgill v. State,* 146 S.W.3d 654, 666 (Tex.Crim.App. 2004). Our consideration is whether the evidence adduced by either party, when viewed in the light most favorable to the appellant, is sufficient to raise the defensive issue. *Granger v. State,* 3 S.W.3d 36, 38 (Tex.Crim.App. 1999). "An accused has the right to an instruction on any defensive issue raised by the evidence, whether such evidence is strong or weak, unimpeached or contradicted, and regardless of what the trial court may or may not think about the credibility of this evidence." *Miller v. State,* 815 S.W.2d 582, 585 (Tex.Crim.App. 1991) (*citing Hayes v. State,* 728 S.W.2d 804, 807 (Tex.Crim.App. 1987)). But an instruction is not required when an affirmative defense is without evidentiary support. *See Dyson v. State,* 672 S.W.2d 460, 463 (Tex.Crim.App. 1984) (self-defense). As discussed, the conduct appellants seek to immunize was not a report or the investigation of a report as contemplated by § 261.106. There lies no dispute of fact on the matter. It was not an abuse of discretion for the trial court to refuse submission of a jury instruction on immunity.

Because appellants presented no evidence of conduct bringing them within the immunity granted by § 261.106, we overrule their first issue.

15

Failure to Instruct on Defenses

In their third issue, appellants contend the trial court erred by failing to submit a requested instruction on their defenses of defense of third person and necessity. Defense of a third person requires *inter alia* the actor reasonably believes his intervention is "immediately necessary" to protect a third person. Tex. Penal Code Ann. § 9.33(2) (Vernon 2003). Necessity requires *inter alia* proof that the actor reasonably believes the conduct in question is "immediately necessary" to avoid "imminent harm." Tex. Penal Code Ann. § 9.22(1) (Vernon 2003).

A "reasonable belief" is one held by an ordinary and prudent person in the same circumstance as the actor. Tex. Penal Code Ann. § 1.07(42) (Vernon Supp. 2009). Whether a defendant was prompted to act by a reasonable belief is ordinarily an issue for the trier of fact. *Brazelton v. State,* 947 S.W.2d 644, 648 (Tex.App.–Fort Worth 1997, no pet.). However, this belief may be deemed unreasonable as a matter of law if undisputed facts demonstrate a complete absence of immediate necessity or immediate harm. *Arnwine v. State,* 20 S.W.3d 155, 159 (Tex.App.–Texarkana 2000, no pet.); *Wilson v. State,* 777 S.W.2d 823, 825 (Tex.App.–Austin 1989), *aff'd* 853 S.W.2d 547 (Tex.Crim.App. 1993). Whether the evidence raises a defense is always a question of law. *Shaw v. State,* 181 S.W.3d 450, 452 (Tex.App.–Waco 2005), *aff'd* 243 S.W.3d 647 (Tex.Crim.App. 2007).

When Gariepy discovered the burglary of her house she became "very upset" and tried unsuccessfully to contact Graves. Appellants then had overnight to deliberate the situation before they embarked on their felonious conduct. Even if one accepts their

16

contention they were motivated at least in part by concern over the possible effects of Oxycontin on Graves' unborn child, we find no reasonable person could believe the assault and kidnapping of Graves and burglary of her apartment were immediately necessary to prevent imminent harm to the child. *See Jackson v. State,* 50 S.W.3d 579, 595 (Tex.App.–Fort Worth 2001, pet. refused) (testimony raised issue of necessity only for defendant to continue driving, not to drive over speed limit, disregard traffic control devices and veer into oncoming lanes of traffic); *cf. Smith v. State,* 874 S.W.2d 269, 273 (Tex.App.–Houston [14th Dist.] 1994, pet. refused) (in overruling evidentiary sufficiency challenge of negative finding of necessity defense in interference with child custody case, court noted appellant could have, but did not, contact CPS regarding safety of children). Appellants' third issue is overruled.

Admissibility of Extraneous Offense Evidence: Rules 404(b) and 403

The State offered video recordings made at the hospital at the time of appellants' arrests by the cameras in the patrol cars of Gonzales and Wilkerson. The recordings contain a statement by Hamilton that he and Graves bought Oxycontin from Gariepy before Graves learned of her pregnancy. According to appellants, this evidence was not admissible under Rule of Evidence 404(b) and even if admissible its probative value was substantially outweighed by the danger of unfair prejudice. *See* Tex. R. Evid. 404(b) & 403. The State counters that the evidence was admissible to rebut appellants' claim that their conduct was motivated by the desire to protect Graves' unborn child from Oxycontin and show their true motive was determining if Graves and Hamilton stole the Oxycontin.

17

Rule 404(b) provides that evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith, but such evidence may be admissible to show "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Tex. R. Evid. 404(b). Merely introducing evidence for a purpose other than character conformity, or any of the other enumerated purposes in Rule 404(b), does not, by itself, make that evidence admissible. *Rankin v. State,* 974 S.W.2d 707, 709 (Tex.Crim.App. 1996). Whether objected-to evidence of "other crimes, wrongs, or acts" has relevance apart from character conformity, as required by Rule 404(b), is a question for the trial court. *Montgomery v. State,* 810 S.W.2d 372, 391 (Tex.Crim.App. 1990) (op. on reh'g). An appellate court owes no less deference to the trial judge in making this judgment than it affords him in making any other relevancy call; that is, such a decision is reviewed for abuse of discretion. *Id.* Therefore, as long as the trial court's ruling was within the zone of reasonable disagreement, we will not intercede. *Id.* Extraneous offense evidence may be admissible under Rule 404(b) to rebut a defensive theory raised by the State's witnesses during opening statement or cross-examination. *Ransom v. State,* 920 S.W.2d 288, 301 (Tex.Crim.App. 1996) (op. on reh'g) (cross-examination of State's witness); *Powell v. State,* 63 S.W.3d 435, 439 (Tex.Crim.App. 2001) (opening statement). Such evidence is relevant apart from proof of character conformity. *See Montgomery,* 810 S.W.2d at 387.

At trial, appellants urged the affirmative defense of immunity and the defenses of defense of third person and necessity. During opening statement counsel for appellants told the jury that the evidence would show the police failed to report the suspected

18

abuse or neglect of Graves' unborn child and that appellants alone took steps to investigate and report the suspected abuse or neglect. Officer Gonzales was the State's first witness and on cross-examination admitted that Gariepy wanted Graves' unborn child checked for Oxycontin, that he did not investigate or report the drug use claim to CPS, and that he believed it was child abuse or neglect for a pregnant woman to take Oxycontin. Appellants' counsel raised their defenses through opening statement and cross-examination of Gonzales. The trial court did not abuse its discretion by admitting Hamilton's statement on the video recording as it was relevant to rebut appellants' defenses.

Relevant evidence may, nevertheless, be excluded under Rule 403 if its probative value is "substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." Tex. R. Evid. 403. When conducting the balancing test of Rule 403, the trial court determines whether the probative value of the evidence is substantially outweighed by one of the countervailing considerations listed in the rule. *Id.* In its evaluation of the evidence, the trial court balances (1) the inherent probative force of the proffered item of evidence along with (2) the proponent's need for that evidence against (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time

or repeat evidence already admitted.   *Casey v. State,* 215 S.W.3d 870, 880 (Tex.Crim.App. 2007).

Appellants complain Hamilton's statement contained on the video recording should have been excluded under Rule 403 because it was "harmful to [their] image before the jury."  At its essence, appellants' case was their claimed concern for Graves' unborn child.   The State's theory was appellants burgled Graves' apartment and kidnapped her because she and Hamilton stole appellants' drugs.   From opening statement through argument, these factual interpretations were before the jury.  We fail to see how Hamilton's brief utterance had a tendency to suggest a decision on an improper basis, cause jury confusion or distraction, or receive undue weight by the jury. *See Gigliobianco v. State,* 210 S.W.3d 637, 642 (Tex.Crim.App. 2006).  The trial court could have, therefore, reasonably concluded that the probative value of Hamilton's statement on the video recording was not substantially outweighed by the danger of unfair prejudice.  We find the trial court did not abuse its discretion by admitting the evidence over appellants' Rule 403 objection.  We overrule appellants' fourth issue.

Failure to Instruct on Lesser Included Offense

By their fifth issue, appellants contend the trial court erred by failing to instruct the jury on the lesser-included offense of criminal trespass of a habitation.

An offense is a lesser included offense if:

(1) it is established by proof of the same or less than all the facts required to establish the commission of the offense charged;

(2) it differs from the offense charged only in the respect that a less serious injury or risk of injury to the same person, property, or public interest suffices to establish its commission;

20

(3) it differs from the offense charged only in the respect that a less culpable mental state suffices to establish its commission; or

(4) it consists of an attempt to commit the offense charged or an otherwise included offense.

Tex. Code Crim. Proc. Ann. art. 37.09 (Vernon 2006).

To determine if a defendant is entitled to a lesser included offense instruction, a two-pronged test applies: (1) the lesser-included offense must be included within the proof necessary to establish the offense charged, and (2) the record must contain some evidence that if the defendant is guilty, he is guilty only of the lesser-included offense. *See Rousseau v. State,* 855 S.W.2d 666, 672 (Tex.Crim.App. 1993). The first prong of the *Rousseau* test is a question of law, wholly independent of the evidence adduced at trial. *Hall v. State,* 225 S.W.3d 524, 535 (Tex.Crim.App. 2007). In analyzing the second prong, we review all the evidence admitted at trial. *Enriquez v. State,* 21 S.W.3d 277, 278 (Tex.Crim.App. 2000). If more than a scintilla of evidence from any source raises the issue that the defendant is guilty only of the lesser-included offense, the instruction is proper on request. *Forest v. State,* 989 S.W.2d 365, 367 (Tex.Crim.App. 1999). "Credibility of the evidence and whether it conflicts with other evidence is not to be considered when determining whether the jury should have been charged with a lesser-included offense." *Paz v. State,* 44 S.W.3d 98, 100 (Tex.Crim.App. 2001).

Here, appellants were charged with burglary pursuant to Texas Penal Code § 30.02(a)(3) which specifies a person commits an offense if, without the effective consent of the owner, the person "enters a building or habitation and commits or attempts to commit a felony, theft, or an assault." Tex. Penal Code Ann. § 30.02(a)(3)

21

(Vernon 2003). A person commits criminal trespass if he enters or remains on or in property of another without effective consent and had notice that the entry was forbidden or received notice to depart but failed to do so. *See* Tex. Penal Code Ann. § 30.05(a) (Vernon Supp. 2009).

The offense of criminal trespass can be a lesser included offense of burglary. *Phillips v. State,* 178 S.W.3d 78, 82 (Tex.App.--Houston [1st Dist.] 2005 pet. refused). For our disposition of appellant's argument, we assume the first prong of the *Rousseau* analysis is satisfied. But under the second prong the evidence must raise an issue that the defendant, if guilty, is guilty only of the lesser offense of criminal trespass of a habitation. *See Pickens v. State,* 165 S.W.3d 675, 679 (Tex.Crim.App. 2005); *Aguilar,* 682 S.W.2d at 558.

Graves testified she was dressing in her apartment when the door broke open. Scroggs stood in the doorway as Gariepy walked across the living room. She pushed Graves onto the bed, pulled her hair, and slapped her. According to Gariepy, she went to the door of Graves' apartment and repeatedly knocked but Graves did not answer. Gariepy then instructed Scroggs to force open the door. According to his statement, Scroggs did so with sufficient force to break the chain lock and the two entered. Gariepy argued with Graves and pushed her onto the bed. Gariepy repeatedly struck Graves on the face. On this record, no rational juror could find that if appellants were guilty, they were guilty only of criminal trespass.

The trial court did not err by denying appellants' request for an instruction on criminal trespass of a habitation. We overrule appellants' fifth issue.

22

Double Jeopardy Violation

We find record indication of unassigned error which we address on our own motion. From the face of the record it appears appellants' convictions for burglary of a habitation violate the Double Jeopardy Clause of the Fifth Amendment of the United States Constitution.[10] "Appellate courts have the jurisdiction and authority to review unassigned error. In the case of a double-jeopardy violation, the issue may be addressed as an unassigned error when the violation is apparent from the face of the record." *Bigon v. State,* 252 S.W.3d 360, 369 (Tex.Crim.App. 2008) (citations omitted).[11]

The indictments allege two counts of burglary of a habitation by appellants. Tex. Penal Code Ann. § 30.02(a)(3) (Vernon 2003). According to count two, appellants "intentionally or knowingly entered[ed] a habitation, without the effective consent of Monique Graves, the owner thereof, and attempted to commit or committed an assault against Monique Graves." Count three alleged appellants "intentionally or knowingly enter[ed] a habitation, without the effective consent of Monique Graves, the owner thereof, and attempted to commit or committed the felony offense of aggravated kidnapping or kidnapping." It is undisputed that the charged burglaries sprang from a single unlawful entry by appellants of Graves' apartment.

---

[10] No person shall "be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const., Amdt. 5.

[11] In *Bigon,* as here, there was no double-jeopardy objection at trial and on the issue error was not assigned in the court of appeals. *Bigon,* 252, S.W.3d at 369. *Cf. Gonzalez v. State,* 8 S.W.3d 640, 643 (Tex.Crim.App. 2000) (double jeopardy claim may be raised for first time on appeal if undisputed facts show double jeopardy violation clearly apparent on face of record and enforcement of usual rules of procedural default would serve no legitimate state interest).

The Double Jeopardy Clause of the Fifth Amendment consists of three separate protections: (1) it protects against a second prosecution for the same offense after acquittal; (2) it protects against a second prosecution for the same offense after conviction; and (3) it protects against multiple punishments. *North Carolina v. Pearce,* 395 U.S. 711, 717, 89 S.Ct. 2072, 23 L.E.2d 656 (1969). Here we are concerned with the third protection, that from multiple punishments.

"A defendant suffers multiple punishments in violation of the Double Jeopardy Clause when he is convicted of more offenses than the legislature intended." *Ervin v. State,* 991 S.W.2d 804, 807 (Tex.Crim.App. 1999) (*citing Ball v. United States,* 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985)). "The legislature . . . determines whether offenses are the same for double-jeopardy purposes by defining the 'allowable unit of prosecution.'" *Ex parte Cavazos,* 203 S.W.3d at 336 (*quoting Sanabria v. United States,* 437 U.S. 54, 69, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978)). "The legislature also decides whether a particular course of conduct involves one or more distinct offenses under a given statute." *Ex parte Cavazos,* 203 S.W.3d at 336. Thus it is the allowable unit of prosecution that determines the scope of double jeopardy's protection from multiple punishments under the burglary statute. *Id.*

The gravamen of a burglary is an unauthorized entry with the requisite mental state. *Ex parte Cavazos,* 203 S.W.3d at 337.[12] The harm of burglary results from the

---

[12] Appellants were indicted under Penal Code § 30.02(a)(3) which dispenses with the intent requirement of § (a)(1) and allows the State to prove after unlawful entry the defendant actually committed or attempted to commit a felony, theft, or assault. Tex. Penal Code Ann. § 30.02(a)(3) (Vernon 2003). *See DeVaughn v. State,* 749 S.W.3d 62, 65 (Tex.Crim.App. 1988) (gravamen of burglary is unlawful entry

unauthorized entry. *Id.* The offense is complete from entry. *Id.* Because burglary is a crime against property and not a person, the allowable unit of prosecution for a burglary is the unlawful entry. *Id.* On the face of this record, we find appellants were punished twice for a single unlawful entry.

On finding a double-jeopardy violation, we retain the conviction with the "most serious punishment," and vacate any remaining convictions that are the "same" for double jeopardy purposes. *Landers v. State,* 957 S.W.2d 558, 560 (Tex.Crim.App. 1997) *overruled on other grounds, Ex parte Cavazos,* 203 S.W.3d at 338. *See Bigon,* 252 S.W.3d at 372-73 (discussing *Landers*). The most serious offense is the offense for which the greatest sentence was assessed. *Ex parte Cavazos,* 203 S.W.3d at 338 (overruling *Landers* to the extent it allowed consideration of other factors such as the degree of the felony, range of punishment, and rules governing parole eligibility and awarding good-conduct time). But here, appellants received identical sentences for their two burglary convictions. We, therefore, break the apparent tie, by affirming the offense first named in the verdict form; burglary predicated on assault. *See Ex parte Cavazos,* 203 S.W.3d at 339 n.8 (court noted some of its cases may have suggested this as a tie breaker but did not address the question). We vacate the judgments convicting appellants of burglary of a habitation predicated on commission of aggravated kidnapping.

---

accompanied by requisite mental state, § 30.02(a)(1) & (2), or requisite acts or omissions under § 30.02(a)(3)).

Sentencing Error

In their sixth issue, appellants claim various errors in the judgments of the trial court. Appellants' complaint of sentencing error for their convictions under count three is rendered moot by our finding of a double jeopardy violation.

Appellants assert the trial court abused its discretion by imposing cumulative sentencing, not adjusting the classification of aggravated kidnapping downward to a second degree felony on the jury's finding that Graves was voluntarily released at a safe place, and not probating the fines for counts two and three as assessed in the verdicts of the jury.

For each appellant, the first page of each judgment states, "This sentence shall run consecutive to the case below." We interpret this means on completion of the sentence imposed for count one, appellants begin service of the sentence imposed under count two.

It is not disputed that the offenses for which appellants were indicted and convicted arose from the same criminal episode. *See* Tex. Penal Code Ann. § 3.01 (Vernon 2003). Subject to exceptions not applicable here, Penal Code § 3.03(a) requires concurrent sentencing when an accused is found guilty of more than one offense arising from the same criminal episode and prosecuted in a single criminal action. Tex. Penal Code Ann. § 3.03(a) (Vernon Supp. 2009). The trial court's imposition of consecutive sentences runs afoul of the statutory requirement, and constitutes an abuse of its discretion.

The judgments under count one, for aggravated kidnapping, classify the offense a first degree felony. While this classification is generally correct, the Penal Code, however, provides an exception. Tex. Penal Code Ann. § 20.04(c) (Vernon 2003). Section 20.04(d) classifies aggravated kidnapping a second degree felony if the defendant proves he voluntarily released the victim in a safe place. Tex. Penal Code Ann. § 20.04(d) (Vernon 2003). The jury found appellants voluntarily released Graves in a safe place. Accordingly, the judgments as to count one should have classified the offense a second degree felony.

In its verdicts on punishment, the jury assessed fines of $5,000 for counts two and three but recommended probation of each. The judgments, however, order payment of a fine of $5,000 on counts two and three. We will reform the judgments of count two to conform to the verdicts of the jury. Because the court included the fines in its calculation of payments ordered by the judgments on count two and because we vacate the judgments under count three, we remand in part with instructions for the trial court to recalculate the total amount owed and monthly installment due of each appellant.

Equal Protection Claim

In their seventh issue, appellants argue they were denied equal protection of the law under the Constitutions of the United States and Texas. Their complaint is the trial court denied their defenses of immunity, defense of third person, and necessity because Graves' child was not, at the time of the events giving rise to the indictment, yet born

27

alive. They imply one protecting a child born alive from ingestion of Oxycontin would be entitled to immunity and justification defenses.

We have discussed why the trial court did not err by denying appellants' motions for directed verdict and refusing jury submission of their proposed instructions on immunity and justification defenses. Because the trial court did not abuse its discretion in denying appellants' motions and requests on non-constitutional grounds, it is not necessary to review their constitutional argument. *Cf. Turner v. State,* 754 S.W.2d 668, 675 (Tex.Crim.App. 1988) (courts do not address the constitutionality of a statute unless consideration is essential to decision). A decision of issue seven is unnecessary to our disposition of the appeal. Tex. R. App. P. 47.1.

## Conclusion

We render judgment vacating the judgments of the trial court on count three of the indictments, burglary of a habitation predicated on aggravated kidnapping.

The remaining judgments of the trial court are modified to provide the sentences assessed against appellants under each judgment shall run concurrently; the classification of offense under count one is a second degree felony; and the fines of $5,000 for count two are probated.

Both cases on appeal are remanded in part with instructions to the trial court to recalculate the amounts owed and monthly installment payments due of each appellant in light of our vacation of the judgments under count three and the probation of fines

28

assessed for count two.  Otherwise, and as modified, we affirm the judgments of the trial court.

James T. Campbell
Justice

Publish.