

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00238-CR

_____

RALEIGH LEE KEMP JR., Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 396th District Court
Tarrant County, Texas
Trial Court No. 1428013D

---

Before Sudderth, C.J.; Birdwell and Womack, JJ.
Memorandum Opinion by Justice Birdwell

## MEMORANDUM OPINION

In one issue, appellant Raleigh Lee Kemp Jr. appeals his conviction for evading arrest on September 7, 2015. Kemp contends that the trial court reversibly erred under Rule 403 when it admitted prejudicial evidence concerning another offense of evading arrest which Kemp committed some eight months later, on May 31, 2016. Because we conclude that the Rule 403 factors weigh, on balance, in favor of admission, we hold that the trial court did not abuse its discretion in admitting the evidence in question. We therefore affirm.

## I.      Background

On the evening of September 7, 2015, Officer James Polyak was driving his marked police unit on the east side of Fort Worth. He came to a stop at a red light, and a new Ford Taurus caught his eye. Officer Polyak ran its license plate. The system showed that the Taurus was a rental car and that a police bulletin had reported the vehicle as possibly stolen. Officer Polyak engaged his emergency lights to conduct a traffic stop. The driver of the Taurus complied.

Officer Polyak found Kemp in the driver's seat and Jose Rios in the passenger seat. Kemp provided his driver's license but said that he did not have the rental paperwork for the vehicle. Officer Polyak returned to his patrol unit to investigate the bulletin further. He found that Kemp matched the description of the driver in the bulletin, so he called for backup. Officer Terrance Horn arrived minutes later.

The two officers approached the Taurus on foot, dressed in full uniform, and as they reached the vehicle's front door, Kemp threw the car in drive and sped off. The officers gave chase, following Kemp in a high-speed pursuit as he passed stop signs and weaved through traffic. The chase led Kemp into a parking lot, and from there, he drove into a field of high grass. Suddenly, Kemp leapt from the moving vehicle and began running through the field in the dark. The officers exited their vehicles and pursued Kemp on foot, yelling for him to stop. Officer Horn reached Kemp first, and they fell into the tall grass struggling. Officer Horn punched Kemp and wrestled him into handcuffs, and Officer Polyak returned to his unit and began to look for the Taurus in the grass. He found Rios waiting in the passenger seat of the Taurus, beneath which the grass had caught fire. Officer Polyak took him into custody and backed him away as the vehicle began to burn.

Kemp was indicted on one count of evading arrest using a vehicle, a felony of the third degree. *See* Tex. Penal Code Ann. § 38.04(b)(2)(A); *Adetomiwa v. State*, 421 S.W.3d 922, 927 (Tex. App.—Fort Worth 2014, no pet.). The indictment included enhancement paragraphs alleging that Kemp had two prior felony convictions. *See* Tex. Penal Code Ann. § 12.42(d). Kemp pleaded not guilty. At trial, the jury was informed that Kemp failed to appear for his first two court dates on February 22, 2016 and August 8, 2016, respectively. The jury was also informed that Kemp had an extensive criminal history, including multiple felonies.

Kemp's defensive theory was necessity and duress. He testified that Rios had a gun and a large amount of drugs in his possession, and that Rios urged him not to pull over when Officer Polyak first triggered his emergency lights. Kemp testified that when he complied with the traffic stop, an argument ensued, and Rios soon ordered him at gunpoint to drive away. According to Kemp, he acquiesced because he believed that Rios would shoot him if he did not comply, so he drove as Rios gave directions. Kemp explained that he jumped out of the car because it caught fire in the field, and when he was tackled by police, he pointed back to the car to alert them that Rios had a weapon. Though no weapon was found on Rios or in the vehicle, Kemp argued that such a weapon might have been destroyed as the vehicle burned. Officer Polyak agreed that he heard loud booms and pops coming from the fire, and Kemp suggested that these might have been caused by bullets exploding inside the vehicle.

However, Officer Polyak testified that he did not see any firearms inside the vehicle at any point during the initial traffic stop. He further testified that when he returned to his patrol unit after his initial encounter with Kemp, he watched the Taurus, but he did not see Rios make any movements that might have indicated he was reaching for a weapon. Officer Polyak felt that, as he and Officer Horn later approached the vehicle on foot, the prospect of having two armed officers alongside the vehicle should have provided Kemp with some security if he was indeed being held at gunpoint, rather than sparking him to lead the officers on a high-speed pursuit. Officer Polyak noted that when Kemp ran from the vehicle, Kemp did not stop

4

running or signal that he needed help, and even when apprehended, he did not mention that Rios had threatened him with a weapon.

To further rebut Kemp's defensive theories of necessity and duress, the State sponsored testimony that Kemp subsequently committed another similar offense of evading arrest eight months later, on May 31, 2016. Officer Gordon Jones testified that on that day, he was notified that Kemp had an outstanding warrant and was in the vicinity. He found Kemp by himself, parked at a local gas station, just getting out of his vehicle. When Officer Jones activated his emergency lights and called out to Kemp, Kemp got back in the vehicle and drove away, leading officers on a chase at speeds exceeding eighty miles-per-hour in a residential area. He then abandoned the vehicle and ran on foot. Kemp was eventually found hiding under a mattress, whereupon he was apprehended. The State emphasized that Kemp was alone throughout his flight from police, with no passenger to purportedly hold him at gunpoint, and yet he evaded arrest just as before. Kemp objected that this testimony's prejudicial content far outweighed any probative value, but the objection was overruled.

At the conclusion of the evidence, the jury found Kemp guilty as charged. The trial court found the enhancement paragraphs true and sentenced Kemp to thirty years' confinement. This appeal followed.

## II.    Admission of Evidence

In his sole issue, Kemp challenges the trial court's decision to admit the testimony of Officer Jones concerning his flight from police on May 31, 2016.  Kemp contends that the probative value of the evidence is substantially outweighed by its attendant danger of unfair prejudice, and it is therefore inadmissible under Texas Rule of Evidence 403.

"If judicial restraint is ever desirable, it is when a Rule 403 analysis of a trial court is reviewed by an appellate tribunal." *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990) (quoting *United States v. Long*, 574 F.2d 761, 767 (3d Cir. 1978)).  We reverse a trial court's determination under Rule 403 "rarely and only after a clear abuse of discretion," recognizing that the trial court is in a superior position to gauge the impact of the evidence.  *Martin v. State*, 176 S.W.3d 887, 895 (Tex. App.—Fort Worth 2005, no pet.).

When a Rule 403 objection is made, the trial court must engage in a balancing process.  *Perez v. State*, 562 S.W.3d 676, 689 (Tex. App.—Fort Worth 2018, pet. ref'd).  On one end of the scales, the court must weigh (1) the inherent probative force of the evidence along with (2) the State's need for the evidence.  *Gigliobianco v. State*, 210 S.W.3d 637, 641 (Tex. Crim. App. 2006).  On the other end, the court weighs (3) any tendency of the evidence to suggest a decision on an improper basis, (4) any tendency of the evidence to confuse or distract the jury from the main issues, (5) any tendency of the evidence to be given undue weight by a jury that has not been equipped to

evaluate the probative force of the evidence, and (6) the likelihood that presentation of the evidence will consume an inordinate amount of time or merely repeat evidence already admitted. *Id.* at 641–42. The balance is always slanted toward admission of relevant evidence, for Rule 403 carries a presumption that relevant evidence will generally be more probative than problematic. *De La Paz v. State*, 279 S.W.3d 336, 343 & n.17 (Tex. Crim. App. 2009); *Wells v. State*, 558 S.W.3d 661, 669 (Tex. App.—Fort Worth 2017, pet. ref'd). It was Kemp's burden to overcome this presumption and demonstrate that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice or other factors. *Wells*, 558 S.W.3d at 669.

We begin with the first factor, the inherent probative force of the evidence. "[P]robably the most common situation which gives rise to the admission of extraneous offenses is in rebuttal of a defensive theory." *Johnston v. State*, 145 S.W.3d 215, 219 n.11 (Tex. Crim. App. 2004) (quoting *Crank v. State*, 761 S.W.2d 328, 341 (Tex. Crim. App. 1988), *disapproved of on other grounds by Alford v. State*, 866 S.W.2d 619 (Tex. Crim. App. 1993)). Many courts, including this one, have found evidence to be relevant when admitted to rebut a defensive theory of necessity or duress. *See Ibarra v. State*, No. 04-11-00845-CR, 2013 WL 1641493, at *6 (Tex. App.—San Antonio Apr. 17, 2013, no pet.) (mem. op., not designated for publication) ("[T]he evidence in question was highly probative because it tended to rebut Ibarra's defense of duress."); *Scroggs v. State*, 396 S.W.3d 1, 14–15 (Tex. App.—Amarillo 2010, pet. dism'd, untimely filed) (op. on reh'g) (necessity); *King v. State*, 189 S.W.3d 347, 355–56 (Tex. App.—

Fort Worth 2006, no pet.) (duress); *Stefanoff v. State*, 78 S.W.3d 496, 502–03 (Tex. App.—Austin 2002, pet. ref'd) (op. on reh'g) (necessity).

The same is true here. Kemp's sole defense was that he was compelled to flee by Rios's implied threat of violence. But this defense was squarely rebutted by evidence that Kemp engaged in another flight from police when Rios was absent. Kemp's subsequent flight also indicates a consciousness of guilt, which further supports an inference of guilt. *Burks v. State*, 876 S.W.2d 877, 903 (Tex. Crim. App. 1994). Thus, this factor weighs heavily in favor of the State.

As to the second factor, the State had a modest need for this evidence. In evaluating this factor, we consider (1) whether the proponent has other available evidence to establish the fact of consequence that the evidence is relevant to show, (2) the strength of the other evidence, and (3) whether the fact of consequence is related to an issue that is in dispute. *Erazo v. State*, 144 S.W.3d 487, 495–96 (Tex. Crim. App. 2004). The State drew out many inconsistencies in Kemp's account of events, such as the fact that Kemp never mentioned a weapon until the early stages of trial. To an extent, this other evidence sapped the strength of Kemp's defense, which was a central and disputed issue. However, none of this other evidence spoke so persuasively as Kemp's second offense of evading arrest, committed in a similar fashion and without any encouragement from an armed passenger. The second factor weighs in favor of the State.

8

As to the third factor, the evidence in question had limited potential to cause unfair prejudice. Unfair prejudice may be created by the tendency of the evidence to prove some adverse fact not properly in issue or to unfairly excite emotions against the defendant. *Montgomery*, 810 S.W.2d at 378. Kemp's second evading offense carried with it some temptation to convict him on the basis of criminal character or propensity. *See Morales v. State*, 293 S.W.3d 901, 912 (Tex. App.—Texarkana 2009, pet. ref'd). Nevertheless, this second offense was no more inflammatory or prejudicial than the charged offense or the litany of other prior offenses to which Kemp admitted, and nothing in the record suggests that the jury convicted the defendant based on the later offense. *See Chavez v. State*, 399 S.W.3d 168, 173 (Tex. App.—San Antonio 2009, no pet.). This factor weighs somewhat in favor of Kemp.

The remaining factors add no weight to the scales. As to the fourth and fifth factors, we do not perceive any way in which the evidence would have confused or distracted the jury, and the evidence was not of a scientific or technical character, such that it might have been given undue weight by an untrained jury. *See Gigliobianco*, 210 S.W.3d at 641. Finally, as to the sixth factor, the trial court could have reasonably concluded that the evidence in question was not cumulative and that its presentation would not consume an inordinate amount of time. Indeed, Officer Jones's testimony comprised less than one-fifth of the testimony in the State's case in chief (33 record pages out of 170 total pages for the State's case). We do not believe that this amount of time was excessive. *See Lane v. State*, 933 S.W.2d 504, 520 (Tex. Crim. App. 1996)

9

(determining that the extraneous offense testimony was not excessive where it constituted less than one-fifth of the State's case in chief). These factors weigh neutrally.

Two factors weigh in favor of admission, one of them heavily so. Only one factor weighs somewhat in favor of exclusion. We therefore conclude that the trial court did not exceed the "considerable freedom" it is afforded in exercising its discretion under Rule 403. *See Montgomery*, 810 S.W.2d at 378. We overrule Kemp's sole issue.

### III.   Conclusion

We affirm the judgment of the trial court.

/s/ Wade Birdwell

Wade Birdwell
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered:  May 23, 2019