

NUMBER 13-10-00250-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CHARLES RUTH III,                                                                   Appellant,

v.

THE STATE OF TEXAS,                                                                 Appellee.

**On appeal from the 107th District Court
of Cameron County, Texas.**

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Rodriguez and Garza
Memorandum Opinion by Justice Rodriguez**

Appellant Charles Ruth III challenges his convictions by a jury for two counts of burglary of a habitation (counts one and two) and one count of aggravated assault (count three). *See* TEX. PENAL CODE ANN. § 22.02(a)(1) (West Supp. 2010), § 30.02(a)(3) (West 2003). By five issues, Ruth complains that the evidence was legally insufficient to support his convictions, the State improperly commented on his post-arrest silence, the

trial court erroneously admitted evidence of a prior conviction without a limiting instruction, and his multiple convictions constituted double jeopardy. We vacate and dismiss counts two and three of Ruth's conviction and affirm count one.

## I. BACKGROUND

Ruth was indicted for two counts of burglary of a habitation. Count one read as follows:

> [O]n or about the 6th Day of November, 2008, [Ruth] . . . did then and there intentionally or knowingly enter a habitation, without the effective consent of Vashti Vela, the owner thereof, and attempted to commit or committed an assault against Jose Angel Alcorta.

(Emphases omitted.) Count two reads as follows:

> [O]n or about the 6th Day of November, 2008, [Ruth] . . . did then and there intentionally or knowingly enter a habitation, without the effective consent of Vashti Vela, the owner thereof, and attempted to commit or committed an assault against Vashti Vela.

(Emphases omitted.) Ruth was also indicted for one count of aggravated assault (count three):

> [O]n or about the 6th day of November, 2008, [Ruth] . . . did then and there intentionally, knowingly, or recklessly cause bodily injury to Jose Angel Alcorta by stabbing or cutting Jose Angel Alcorta, and [Ruth] did then and there use or exhibit a deadly weapon, to wit: a knife, during the commission of said assault.

(Emphases omitted.) Finally, Ruth was indicted for aggravated kidnapping.

Ruth pleaded not guilty to all counts, and the case was tried to a jury. The jury found Ruth guilty on the burglary and aggravated assault charges (counts one, two, and three) and sentenced him to thirty-five years' incarceration for each of those counts.[1] The trial court ordered the sentences to run concurrently. This appeal followed.

---

[1] The jury acquitted Ruth of aggravated kidnapping.

## II. SUFFICIENCY OF THE EVIDENCE

By his first issue, Ruth argues that the evidence was legally insufficient to prove his identity for any of the convicted offenses. Specifically, Ruth argues that the testimony at trial did not positively identify him as the perpetrator for either the burglaries or the aggravated assault.

In a sufficiency review, courts examine all of the evidence in the light most favorable to the verdict to determine whether "any rational fact finder could have found guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979); *see Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010) ("[T]he *Jackson* legal-sufficiency standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt."). This standard requires reviewing courts to resolve any evidentiary inconsistencies in favor of the judgment, keeping in mind that the fact finder is the exclusive judge of the facts, the credibility of the witnesses, and the weight to give their testimony. *Brooks*, 323 S.W.3d at 899; *see* TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979) ("The jury, in all cases, is the exclusive judge of the facts proved, and of the weight to be given to the testimony . . . ."). Appellate courts do not re-evaluate the weight and credibility of the evidence; they only ensure that the jury reached a rational decision. *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009).

It is not necessary that the evidence directly proves the defendant's guilt; "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of the actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v.*

3

*State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007); *see Kuciemba v. State*, 310 S.W.3d 460, 462 (Tex. Crim. App. 2010). A fact finder may support its verdict with reasonable inferences drawn from the evidence, and it is up to the fact finder to decide which inference is most reasonable. *Laster*, 275 S.W.3d at 523.

Here, the evidence at trial showed that Ruth and Vela had a prior relationship. On November 5, 2008, Ruth called Vela at work. Vela did not answer Ruth's subsequent repeated calls or respond to his text messages. Vela testified that Ruth's messages were angry and aggressive and accused her of "talking to [Alcorta]"; Vela stated that Ruth was "threatening [her], calling [her] a bitch and a whore and just stuff like that."

Later that evening, Vela met up with Alcorta, who stayed with Vela at her apartment that night. In the early morning hours of November 6, 2008, Vela and Alcorta were awakened by loud banging on the front door of Vela's apartment. They did not answer the door. Vela testified that she looked outside and saw Ruth's car. She testified that she heard Ruth's car start up and leave; she knew it was Ruth's car leaving because it "was late," so there was no one else awake in the parking lot, and his car made a specific sound when it was starting. Later in the night, Vela and Alcorta were awakened by someone banging on and then breaking in the back door of Vela's apartment. The intruder proceeded to the bedroom. Vela hid in the closet while Alcorta confronted the intruder, who stabbed Alcorta "on [his] side and on [his] armpit." Alcorta identified the intruder as Ruth. Vela did not come out of the closet until the intruder had fled the apartment.

Ruth's sister, Cynthia Cuevas, testified that around 4:00 a.m. on November 6, 2006, Ruth came to her home drunk, mad, and covered in blood. Ruth told Cuevas that

4

"he had stabbed the little boy, that he caught [Vela] with him and—I remember he said that it was his best friend or something like that."

Contrary to Ruth's assertion on appeal, there was testimony at trial positively indentifying him as the intruder who stabbed Alcorta. Regardless, identity may be proved by either direct or circumstantial evidence, and there was also ample circumstantial evidence in this case identifying Ruth as the perpetrator of the charged offenses. *See Gardner v. State*, 306 S.W.3d 274, 285 (Tex. Crim. App. 2009) ("[T]he State may prove the defendant's identity . . . by either direct or circumstantial evidence, coupled with all reasonable inferences from that evidence."); *see also Hooper*, 214 S.W.3d at 13; *Kuciemba*, 310 S.W.3d at 462. His menacing messages to Vela, the presence of his car at the scene, and his later appearance at his sister's house, where he was covered in blood and admitted that he stabbed the "little boy" he "caught" with Vela, all connect Ruth with the burglaries and the assault.

Viewing the evidence in the light most favorable to the verdict, we conclude that a rational jury could have identified Ruth, beyond a reasonable doubt, as the person who committed the burglaries and aggravated assault. *See Jackson*, 443 U.S. at 318-19; *Brooks*, 323 S.W.3d at 895. Thus, the evidence supporting Ruth's convictions was legally sufficient in this regard. We overrule his first issue.

### III. COMMENT ON POST-ARREST SILENCE

By his second issue, Ruth complains that the State improperly commented on his post-arrest silence when the prosecutor questioned a police officer "about the police giving suspects the opportunity to tell police their side of the story." Ruth also complains that the State improperly commented on his post-arrest silence in its closing argument.

5

The State violates a defendant's Fifth Amendment privilege against self-incrimination when it comments on his post-arrest silence. *Doyle v. Ohio*, 426 U.S. 610, 617-18 (1976). This is because commenting on a defendant's post-arrest silence raises an inference of guilt in the same way as a comment on his failure to testify at trial. *Dinkins v. State*, 894 S.W.2d 330, 356 (Tex. Crim. App. 1995). To determine whether the State commented on a defendant's exercise of his right to remain silent, we view the language from the jury's standpoint and the context in which the comment was made and decide whether the jury would necessarily and naturally take it as a comment on the defendant's exercise of his constitutional right. *See Bustamante v. State*, 48 S.W.3d 761, 765 (Tex. Crim. App. 2001).

Ruth points to the following exchange between the State and Harlingen Police Department Investigator Myriam Anderson as the impermissible comment on his post-arrest silence during trial:

| [Prosecutor]: | And like what do you look for that would corroborate that person's allegation, "I just got stabbed"? |
|---|---|
| [Investigator Anderson]: | The evidence would be injuries. It would be witnesses; statements made by the victims; and in the preliminary investigation, even statements made by the suspect as well. |
| | . . . . |
| [Prosecutor]: | Okay. What happens if the suspect is not there? |
| [Investigator Anderson]: | If the suspect is not there, later on a step that we take is to give the suspect the opportunity to provide a statement to see if there is any additional information. |
| [Prosecutor]: | So if a police officer comes to the scene of the |

crime and we have somebody acting like that in the picture there, he's bleeding, actually blood is gushing out of him and he gives you a statement, you know, can they assert, "Well, you only got his side of the story. It's all one sided"? I mean—

[Defense counsel]: Your Honor, I'm going to object [to the State's allusion to Ruth's Fifth Amendment right to not testify] . . . .

However, we have reviewed the testimony preceding this exchange, and the context in which it occurred negates a conclusion that the State commented on Ruth's post-arrest silence.

In an earlier exchange with defense counsel, Investigator Anderson testified regarding a domestic violence report Vela had filed in 2003. Defense counsel elicited testimony from Investigator Anderson that Vela had given conflicting statements in that report. When defense counsel passed the witness, the State questioned Investigator Anderson about the standard procedure for processing domestic violence complaints. Investigator Anderson testified that when the police receive a domestic violence complaint, they conduct a "field investigation" that involves interviewing "all the parties present" and "finding possible witnesses." Investigator Anderson testified that victims of domestic violence often change their stories after the initial complaint and that she does not necessarily consider that "a lie." Thus, because victim statements are often not reliable, Officer Anderson typically looks for some sort of corroboration; in other words, she does not "just take that person's word for it." It was this explanation of investigation techniques and procedures that led to Investigator Anderson's testimony about looking for "injuries," "witnesses," victim statements, and "even statements made by the suspect as well." The prosecution's follow-up comments that "you only got his side of the story"

7

and "[i]t's all one sided" flowed from their general discussion about how the police take statements and investigate domestic violence cases and the State's obvious attempt to rehabilitate Vela as a witness after defense counsel elicited testimony that she may have lied in a report.

Ruth also complains that the State improperly commented on his post-arrest silence in its closing argument when it stated, "Now, who else gave us the same testimony? Well, how about the defendant himself?" What Ruth omits, however, is the argument preceding and following that statement:

> And then there's a fight, and there's blood on the floor. There's a stabbing. The defendant flees out through the back. And then Joey [Alcorta] leaves, but then he comes back and he turns back when the police show up. And then he had two bloody puncture wounds. Again, the photos also support what he testifies to.
>
> Now who else gave us the same testimony? Well, how about the defendant himself? The defendant told his sister Cynthia, and Cynthia then told us how the defendant had told her that he had just finished coming from Valerie's house and found her with someone and got into with that person, that he had stabbed that person . . . .
>
> Okay. Up to this point, we have Valerie's testimony consistent with Joey's testimony that is consistent with Cynthia's testimony . . . .

In context, the complained-of statement is clearly not a comment on Ruth's post-arrest silence. Instead, it is merely part of the State's summary of the evidence, which included testimony by Ruth's sister that he essentially admitted the stabbing to her.

Therefore, looking at the context in which the foregoing complained-of exchange and statement occurred, we cannot conclude that the jury would have necessarily and naturally taken them as comments on Ruth's post-arrest silence. We overrule Ruth's second issue.

8

## IV. ADMISSION OF PRIOR CONVICTION WITHOUT LIMITING INSTRUCTION

By his third issue, Ruth argues that the trial court violated rule of evidence 105 by refusing to give the jury a limiting instruction when it admitted testimony related to Ruth's prior conviction.   Ruth complains of the following exchange, in particular:

| [Prosecutor]: | Okay.  You mentioned—the question was, did you know that he had a criminal record? |
|---|---|
| [Vela]: | Yes. |
| [Prosecutor]: | And what criminal record is that from your understanding? |
| [Vela]: | He's a convict.  He had a burglary charge or something like that.[2] |
| [Prosecutor]: | Okay.  Convict, how do you mean? |
| [Vela]: | He went to prison for like four years. |

At this point, Ruth objected and asked for a limiting instruction, specifically that "the jury be instructed that his prior convictions or arrests are limited just for the purposes of him not being qualified to be on the application for the apartment complex."   The trial court denied the requested instruction, stating that the "door's been opened on [Ruth's] criminal record."

Texas Rule of Evidence 105 provides:

When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly; but in the absence of such request the court's action in admitting such evidence without limitation shall not be ground for complaint on appeal.

TEX. R. EVID. 105(a).  Rulings on evidentiary issues are left to the trial court's sound

---

[2] The record indicates that Ruth's prior conviction was for robbery.

discretion. *See McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008). A trial court abuses its discretion when its decision lies outside the zone of reasonable disagreement. *Id.* We must uphold the trial court's evidentiary ruling if it is correct under any applicable theory of law. *Trevino v. State*, 991 S.W.2d 849, 853 n.5 (Tex. Crim. App. 1999).

Before the State asked Vela about Ruth's criminal record in re-direct, defense counsel cross-examined Vela at length about whether she and Ruth had ever lived together and, through his questioning, attempted to establish that Ruth lived at the apartment at the time of the alleged burglary. In response to questions from defense counsel, Vela testified that Ruth began living with her periodically beginning in 2007. Vela testified that Ruth was never listed on any of the leases for their apartments "because he's a convict." In connection with this questioning, defense counsel admitted as evidence a series of documents from the housing authority and apartment complex informing Vela that they were aware that Ruth was living in the apartment and warning Vela that Ruth's residence at the apartment was not permitted. One of those documents was a letter from the apartment complex manager to the housing authority notifying the housing authority that Ruth had been "repeatedly warned about staying in [Vela's] apartment without the proper permission." According to the letter, Ruth told the apartment complex manager that "he cannot add himself to the lease because he has a criminal record."

The trial court did not err in admitting Vela's testimony regarding Ruth's prior conviction without a limiting instruction for two reasons. First, Ruth's request for a limiting instruction was untimely. A party must request a limiting instruction at the first

10

admission of the challenged evidence. *Hammock v. State*, 46 S.W.3d 889, 892 (Tex. Crim. App. 2001) (citing *Garcia v. State*, 887 S.W.2d 862, 878 (Tex. Crim. App. 1994)). When the opposing party fails to request a limiting instruction at this first opportunity, the evidence is admitted for all purposes. *Id.* This is because "[a]llowing the jury to consider evidence for all purposes and then telling them to consider that same evidence for a limited purpose only is asking a jury to do the impossible. If a limiting instruction is to be given, it must be when the evidence is admitted to be effective." *Id.* at 894. The evidence of Ruth's criminal history came in, during Ruth's cross-examination of Vela, through his own admission into evidence of Vela's various apartment and lease-related documents and his own solicitation of testimony by Vela that Ruth is a convict. When the State later questioned Vela about Ruth's criminal history during re-direct, the evidence had already been before the jury for some time.

Second, the State solicited Vela's testimony about Ruth's criminal history as part of its efforts to rebut the impression created by defense counsel's questioning that Ruth lived at the apartment at the time of the burglary. When an extraneous offense is admissible to prove a main fact in the case, a limiting instruction is not required. *Porter v. State*, 709 S.W.2d 213, 215 (Tex. Crim. App. 1986). Here, Ruth's cross-examination of Vela created the impression that Ruth lived at the apartment and, as such, sowed doubt as to whether he entered the apartment without Vela's effective consent. This was an essential element the State was required to prove in the case. *See* TEX. PENAL CODE ANN. § 30.02(a); *see also DeVaughn v. State*, 749 S.W.2d 62, 65 (Tex. Crim. App. 1988) ("The gravamen of the offense of burglary clearly remains entry of a building or habitation without the effective consent of the owner . . . ."). When the State then questioned Vela

11

about Ruth's criminal history on re-direct, our review of the testimony indicates that it was the lead-in to the State's attempts to establish why Ruth did not live at the apartment and, accordingly, prove that Ruth entered the apartment without the effective consent of the owner, Vela.

For these reasons, Ruth was not entitled to a limiting instruction. Because the trial court's ruling is correct under the foregoing theories of law, we conclude that the court did not abuse its discretion in admitting Vela's testimony about Ruth's prior conviction without a limiting instruction. Ruth's third issue is overruled.

## V. DOUBLE JEOPARDY

By two issues, Ruth argues that his convictions violate the Double Jeopardy Clause of the United States Constitution. *See* U.S. CONST. amend. V. Specifically, by his fourth issue, Ruth argues that his multiple burglary convictions (counts one and two) constitute double punishment for a single act; and by his fifth issue, Ruth argues that his convictions on the first count of burglary (count one, which includes the commission or attempted commission of assault against Alcorta) and the aggravated assault count (count three, in which the victim was Alcorta) amount to *Blockburger* double jeopardy because proving the burglary charge necessarily required the State to prove all of the elements of the underlying aggravated assault.[3] *See id.*; *Blockburger v. United States*, 284 U.S. 299, 304 (1932).

---

[3] The State asserts that because Ruth did not raise these multiple-punishment double jeopardy issues in the trial court, he has not preserved them for our review. However, the double jeopardy violations in this case are apparent on the face of the record and the enforcement of procedural default rules would serve no legitimate state interest as the convictions at issue happened in the same court, on the same day, before the same judge, and were based on the same evidence. *See Gonzalez v. State*, 8 S.W.3d 640, 643 & n.15 (Tex. Crim. App. 2000) (citations omitted). Thus, Ruth may raise them for the first time on appeal. *See id.* at 643-44; *Langs v. State*, 183 S.W.3d 680, 687 (Tex. Crim. App. 2006).

The Fifth Amendment provides that "[n]o person shall be . . . subject for the same offense to be twice put in jeopardy of life or limb."  U.S. CONST. amend. V.  "The United States Supreme Court has concluded that the Fifth Amendment offers three separate constitutional protections:  (1) protection against a second prosecution for the same offense after acquittal; (2) protection against a second prosecution for the same offense after conviction; and (3) protection against multiple punishments for the same offense." *Ex parte Cavazos*, 203 S.W.3d 333, 336 (Tex. Crim. App. 2006) (citing *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969); *Lopez v. State*, 108 S.W.3d 293, 295-96 (Tex. Crim. App. 2003)).  This case poses issues of multiple punishments for the same offense.

We address first whether Ruth's burglary convictions under counts one and two violate the Double Jeopardy Clause—we find they do.  In *Ex parte Cavazos*, the court of criminal appeals reasoned and held as follows:

> [A] defendant suffers multiple punishments in violation of the Double Jeopardy Clause when he is convicted of more offenses than the legislature intended.  However, the Double Jeopardy Clause imposes few, if any, limitations on the legislative power to establish and define offenses.  The legislature, therefore, determines whether offenses are the same for double-jeopardy purposes by defining the "allowable unit of prosecution." The legislature also decides whether a particular course of conduct involves one or more distinct offenses under a given statute.  Consequently, the scope of the Double Jeopardy Clause's protection against multiple punishments under the burglary statute depends on ascertaining the allowable unit of prosecution.
>
> . . . .
>
> [T]he gravamen of a burglary is the entry without the effective consent of the owner and with the requisite mental state.  This Court has found that, when a burglary is committed, the harm results from the entry itself.  The offense is complete once the unlawful entry is made, without regard to whether the intended theft or felony is also completed.
>
> The allowable unit of prosecution for an assaultive offense is each complainant.  Burglary, however, is not an assaultive offense; rather, its

13

placement within Title 7 [of the penal code] indicates that the legislature determined burglary to be a crime against property. Thus, the complainant is not the appropriate allowable unit of prosecution in a burglary[;] rather, the allowable unit of prosecution in a burglary is the unlawful entry. [A defendant]'s convictions violate double jeopardy [when] he is punished multiple times for a single unlawful entry.

203 S.W.3d at 336, 337 (internal citations and quotations omitted). Ruth's two burglary convictions fit squarely within the foregoing holding. The only difference between the two counts of conviction is the alleged assault victim. Both counts are based on a single unlawful entry, and it is that unlawful entry that is the allowable unit of prosecution for purposes of our constitutional analysis. *See id.* For this reason, we conclude that Ruth's convictions on counts one and two constitute multiple punishments for one unlawful entry and, as such, violate the Fifth Amendment's double jeopardy prohibition. Ruth's fourth issue is sustained.

With regard to Ruth's second double jeopardy contention, we note that the State appears to concede that Ruth's convictions for counts one and three violate the prohibition against double jeopardy. And we agree. The Texas Court of Criminal Appeals has held that

[A] defendant may not be punished for both the underlying felony and burglary if the burglary allegation is that the defendant entered a home without the consent of the owner and then committed the underlying felony within the home as defined in [section] 30.02(a)(3). Thus, the State may obtain either a burglary or the underlying felony (or theft or assault) conviction if it alleges a burglary under [s]ection 30.02(a)(3) of the [p]enal [c]ode, but not both.

*Langs v. State*, 183 S.W.3d 680, 686 (Tex. Crim. App. 2006) (citations omitted). Here, through Ruth's convictions for both count one and count three, the State did just that. In count one, Ruth was convicted, pursuant to penal code section 30.02(a)(3), of entering Vela's home without her consent and committing or attempting to commit assault against

14

Alcorta.[4] *See* TEX. PENAL CODE ANN. § 30.02(a)(3). And in count two, Ruth was convicted of assaulting Alcorta. The Constitution prohibits this multiple-punishment scenario. *See Langs*, 183 S.W.3d at 686; *see also Blockburger*, 284 U.S. at 304. As such, we conclude that Ruth's convictions for counts one and three are also multiple punishments for the same offense, which violate the Fifth Amendment. Ruth's fifth issue is sustained.

The question remaining is which counts of conviction should be vacated and which retained.[5] "The Supreme Court has directed that when a defendant is convicted in a single criminal action of two offenses that are the 'same' for double jeopardy purposes, the remedy is to vacate one of the convictions." *Landers v. State*, 957 S.W.2d 558, 559 (Tex. Crim. App. 1997), *overruled on other grounds by Ex parte Cavazos*, 203 S.W.3d at 338 (citing *Ball v. United States*, 470 U.S. 856, 864-65 (1985)). In making that determination, we retain the conviction for the "most serious" offense and set aside the other. *Ex parte Cavazos*, 203 S.W.3d at 337. "[T]he 'most serious' offense is the offense of conviction for which the greatest sentence was assessed."[6] *Id.* at 338.

In this case, the punishments imposed for all three counts of conviction are

---

[4] An attempted offense is the same offense as the committed offense for purposes of double jeopardy. *See Langs*, 183 S.W.3d at 685 (citing *Brown v. Ohio*, 432 U.S. 161, 168-69 (1977)) (holding that one of the contexts in which a multiple-punishments claim can arise is "the lesser-included offense context, in which the same conduct is punished twice; once for the basic conduct, and a second time for that same conduct plus more (for example, attempted assault of Y and assault of Y; assault of X and aggravated assault of X)").

[5] In its brief, the State suggests that this Court "dismiss Count One of the indictment" and posits that "[i]n dismissing Count one of the indictment[,] the allegations contained in Counts two and three are no longer issues of double jeopardy." While we agree with the State that this would, indeed, remedy the double jeopardy issues posed by Ruth's convictions, the State cites no authority for its suggestion and does not otherwise explain why dismissing count one would be the correct course of action. And for the reasons discussed *infra*, we conclude that dismissing count one is not, in fact, the correct disposition in this case.

[6] In *Ex parte Cavazos*, the defendant was sentenced to twenty-five years' incarceration for both burglary offenses; the court determined that the conviction that included $122.00 in restitution was the most serious offense and retained that conviction. 203 S.W.3d 333, 338-39 (Tex. Crim. App. 2006).

15

identical: for each offense, Ruth was sentenced to thirty-five years' incarceration, no fine was assessed, and no restitution was ordered. Thus, no offense in this case is "more serious" than any other.[7] In *Ex parte Cavazos*, however, the court of criminal appeals appears to have left one door open. The court noted that "[s]ome of our case law suggests that, all other factors being equal, the conviction that should be affirmed is the offense named in the first verdict form" and that, "[g]enerally, this will be the offense described in Count I of the indictment." *Id.* at 339 n.8 (citing *Ex parte Cravens*, 805 S.W.2d 790, 791 (Tex. Crim. App. 1991); *Ex parte Siller*, 686 S.W.2d 617, 620 (Tex. Crim. App. 1985)) (other citations omitted). Because we face an unsettled question in the case before us and because the court of criminal appeals expressly declined to address the issue in *Ex parte Cavazos*, *see id.*, we choose to return to the approach favored by earlier case law and retain the first-indicted offense. *See Ex parte Cravens*, 805 S.W.2d at 791; *Ex parte Siller*, 686 S.W.2d at 620; *see also Scroggs v. State*, Nos. 07-07-0453-CR, 07-07-0454-CR, 2010 WL 1993676, at *12 (Tex. App.—Amarillo May 19, 2010, pet. dism'd) (breaking the tie by retaining first-indicted conviction); *Pinkston v. State*, No. 02-08-165-CR, 2009 WL 2414373, at *7 (Tex. App.—Fort Worth Aug. 6, 2009, no pet.) (mem. op., not designated for publication) (same).

Thus, as between Ruth's two burglary convictions, we set aside count two (unlawful entry without Vela's consent and the assault or attempted assault of Vela) and

---

[7] Neither do the convictions in this case include any distinguishing factor utilized by the courts since *Ex parte Cavazos* for other seemingly identical sentences, such as: a differing degree of felony between the convictions, *see Bigon v. State*, 252 S.W.3d 360, 373 (Tex. Crim. App. 2008); an affirmative finding of the use of a deadly weapon in one conviction over another, *see Villanueva v. State*, 227 S.W.3d 744, 749 (Tex. Crim. App. 2007); or one conviction was a second-degree felony enhanced to a first-degree, whereas the other was an unenhanced first-degree felony, *see Williams v. State*, 240 S.W.3d 293, 301-02 (Tex. App.—Austin 2007, no pet.).

retain count one (unlawful entry without Vela's consent and the assault or attempted assault of Alcorta). Then, as between Ruth's count one burglary conviction and count three assault conviction, we set aside count three and retain count one.

## VI. Conclusion

We vacate and dismiss counts two and three of Ruth's conviction and affirm count one.

NELDA V. RODRIGUEZ
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the 29th
day of August, 2011.

17