

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-23-00377-CR

_____

KATASHA JUSTINE WOODARD, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 181st District Court
Randall County, Texas
Trial Court No. 32180B, Honorable John Board, Presiding

July 2, 2024

MEMORANDUM OPINION

Before QUINN, C.J., and DOSS and YARBROUGH, JJ.

Appellant, Katasha Justine Woodard, appeals from her conviction for stalking[1] and resulting sentence of ten years of confinement in prison. Appellant brings three challenges: to the sufficiency of the evidence, to the requirement to repay certain costs and attorney's fees, and to the constitutionality of her sentence. We sustain, in part, Appellant's second issue and modify the judgment deleting any obligation to repay court-

---

[1] *See* TEX. PENAL CODE ANN. § 42.072.

appointed attorney's fees. We overrule Appellant's remaining issues and affirm the judgment of the trial court as modified.

## Background

Appellant and Shawn Swatzell previously had an intimate relationship that resulted in the birth of one child, M.S. Initially, Appellant was appointed M.S.'s "primary custodial parent." However, in a 2019 modification order, Swatzell became M.S.'s primary custodial parent. Appellant was granted supervised visitation until it proved unworkable. Thereafter, Appellant was ordered to undergo a structured and incremental schedule for possession and access: beginning with therapeutic visitation, followed by supervised visitation, and eventually weekend visitation.

During periods relevant to this appeal, Swatzell lived with Ashly Hogan. At the time of trial, Swatzell and Hogan had been in a relationship for eleven years and had a child together. The family lived in an Amarillo home with five children.

Appellant had a contentious relationship with Swatzell, contending her lack of access to M.S. was unwarranted. After several instances in which Appellant came to Swatzell's home, more fully described below, she was indicted for stalking. A jury returned a guilty verdict, and she was sentenced as noted. This appeal followed.

## Analysis

### Sufficiency of the Evidence

By her first issue, Appellant challenges the sufficiency of the evidence supporting her conviction for stalking, arguing the State failed to present sufficient evidence that

Swatzell was actually placed in fear as a result of her conduct. Due process requires the State prove every element of the crime charged beyond a reasonable doubt. *Cada v. State,* 334 S.W.3d 766, 772–73 (Tex. Crim. App. 2011). A court reviewing the sufficiency of the evidence must view the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found each essential element of the offense beyond a reasonable doubt based on the evidence before it and reasonable inferences therefrom. *Jackson v. Virginia,* 443 U.S. 307, 320, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *Brooks v. State,* 323 S.W.3d 893, 896 (Tex. Crim. App. 2010). The jury is entitled to judge the credibility of the witnesses and can believe all, some, or none of the testimony presented by the parties. *Chambers v. State,* 805 S.W.2d 459, 461 (Tex. Crim. App. 1991).

When we evaluate the sufficiency of the evidence, we compare the elements of the offense as defined by a hypothetically correct jury charge to the evidence adduced at trial. *Thomas v. State,* 444 S.W.3d 4, 8 (Tex. Crim. App. 2014) (citing *Malik v. State,* 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)). However, "if the penal offense sets out various statutory alternatives for the distinct elements of the crime, the jury charge may contain only those alternative elements that are actually alleged in the indictment." *Cada,* 334 S.W.3d 766, 773 (Tex. Crim. App. 2011).

The indictment alleged Appellant committed certain offenses of stalking. We quote the relevant portion of the indictment, along with corresponding provisions found in section 42.072 of the Texas Penal Code:

> [T]hat KATASHA JUSTINE WOODARD, hereinafter called the defendant,
> from the 12th day of August, 2019, through the 14th day of July, 2021, and

3

before the presentment of this indictment, in said County and State, did then and there, and pursuant to the same scheme and course of conduct that was directed specifically at Shawn Swatzell, hereafter styled the complainant,[2] knowingly engage[d] in conduct directed specifically toward [Swatzell] that [Woodard] knew or reasonably should have known that [Swatzell] would regard as threatening[3] [Swatzell] with bodily injury or death,[4] <u>or to be in fear</u> that an offense would be committed against [Swatzell's] property,[5] …and [Woodard's] conduct would cause a reasonable person to fear,[6] and did cause [Swatzell][7] to be placed in fear of bodily injury or death[8] OR be in fear that an offense would be committed against his property[9] OR feel harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended . . . .[10]

(underlining added). We underline the indictment's phrase "or to be in fear" because it appears to differ from section 42.072: the statute requires proof that Appellant knows or reasonably should know Swatzell will regard her conduct as "threatening" that an offense will be committed against his property, whereas the indictment appears to allege Appellant committed conduct that placed Swatzell "in fear" of an offense against his property.

We agree with the State that the indictment independently alleged Appellant's repeated course of conduct directed at Swatzell threatened him and caused him to feel "harassed, annoyed, alarmed, abused, tormented, embarrassed, or offended." Appellant

---

[2] *See* TEX. PENAL CODE ANN. § 42.072(a) (setting forth elements of stalking to require proof that defendant knowingly engages in prohibited conduct "on more than one occasion and pursuant to the same scheme or course of conduct that is directed at a specific other person . . . .") (footnotes added).

[3] *Id. at* § 42.072(a)(1).

[4] *Id*. at § 42.072(a)(1)(A).

[5] *Id*. at § 42.072(a)(1)(B)(iii).

[6] *Id*. at § 42.072(a)(3).

[7] *Id*. at § 42.072(a)(2).

[8] Combining *id.* at § 42.072(a)(2)(A) and (3)(A).

[9] Combining *id.* at § 42.072(a)(2)(A) and (3)(C).

[10] Combining *id.* at § 42.072(a)(2)(B) and (3)(D).

does not dispute the evidence supporting these allegations in the indictment and the jury's verdict.

Moreover, the evidence demonstrates a pattern of conduct by Appellant aimed at the occupants of Swatzell's home, resulting in Swatzell feeling fear. Specific instances include, but are not limited to, the following:

- Summer 2019: Appellant was seen by a neighbor sitting near Hogan's vehicle with a slashed tire that had been inflated earlier in the day. When a police officer arrived to investigate and issue a criminal trespass warning, Appellant threatened to "damage [Hogan's] face" and said she might "forget" she was trespassed and return to Swatzell's home anyway.

- July 2020: After Appellant was unsuccessful in seeing M.S. at Swatzell's home, she threatened to kill him, Hogan, and the children. Later that day, she returned to the home with a baseball bat, again threatened to kill Swatzell,[11] live-streamed threats on Facebook, and was arrested for criminal trespass. Arresting officers found knives and a meat thermometer on her. Swatzell testified about attempting to remain calm, but "freaking out on the inside."[12]

- Viewing the Facebook threats caused Swatzell to put his "head on a swivel." In addition to taking precautions to memorize the vehicles she drove, Swatzell increased home security by installing cameras on the windows and doors, a secured front door, and deadbolts on the back fences. He and Hogan also implemented safety protocols for their children,[13] such as instructing them to avoid Appellant and call the police if she appeared, and instructing the children to travel with a "battle buddy."

- December 5, 2020 - Attempted Entry: Appellant returned to Swatzell's home early in the morning while the family slept. She asked a child to open the door under

---

[11] A neighbor heard Appellant punctuate her words to Swatzell with, "And you can take that as a death threat."

[12] Swatzell further testified about his fear of Appellant despite his outward attempt to appear "strong":

Yes, I get freaked out. It -- on my own. Each time she comes over or each time I see her, I can't -- I can't breathe right. I can't -- I get the shakes. I -- my words get not as fluid as possible. I have to really concentrate . . . . And being scared -- . . . a man doesn't -- supposed to tell that he's scared or whatever. He's supposed to be strong. Be scared in -- on your own behind closed doors somewhere.

[13] Testimony suggests these precautions were implemented to avoid Appellant. They told the children to "Leave, run, call, do something. Don't let *her* in. You know, don't answer the door. Call the cops. Call us."

the pretense of delivering a package. The boy refused. Police were called by Appellant's parents because she also had left a note indicating plans to commit murder. This incident caused Swatzell to feel "scared," realizing that Appellant could have entered the house if the children had not been instructed to never open the door.

- July 2021: Swatzell responded to a knock at 6:45 a.m. and observed Appellant at the front door. Two cameras recorded as Appellant repeatedly hit Swatzell's vehicle with a baseball bat.

Upon reviewing the record evidence, we determine that a reasonable juror could find beyond a reasonable doubt that Swatzell experienced actual fear as a result of Appellant's conduct. The testimony indicates that although Swatzell attempted to maintain a calm demeanor, he was indeed experiencing real fear and physical symptoms during interactions with Appellant. Additionally, the jury could infer Swatzell's fear from the evidence of his purchases of home security equipment, the implementation of family safety precautions to avoid Appellant, and his personal decision to maintain a safe physical distance from her. Appellant's first issue is overruled.

**Payment of Court Costs Including Attorney's Fees**

By her second issue, Appellant argues the trial court erred in finding she had the ability to pay fees and costs later or in installments. Although the argument conflates the payment of court costs and attorney's fees, we will address the complaints separately. *See* TEX. R. APP. P. 38.9 ("Briefing Rules to Be Construed Liberally"); *Scroggs v. State,* 396 S.W.3d 1, 11 (Tex. App.—Amarillo 2010, pet. ref'd, untimely filed) (op. on reh'g).

The judgment of October 5, 2023, states the following in relevant part:

- "After having conducted an inquiry into Defendant's ability to pay, the Court ORDERS Defendant to pay the fines, court costs, reimbursement fees, and restitution as indicated above and further detailed below."

6

- Ordering Appellant to pay "Attorney's Fees, as applicable (Art.42A.301(b)(I 1) & 26.05(g), Code Crim. Proc.) SEE BILL OF COSTS"

- Pursuant to Article 42.15(a-1) of the Code of Criminal Procedure, the court found "The defendant does not presently have sufficient resources or income to immediately pay all or part of the fine and costs but will, in the future, have the ability to pay the fine and costs at a later date or at designated intervals."

- "The defendant shall pay all of the fine and costs to District Clerk/County Clerk or its designee upon release on parole or completion of his/her sentence. If the defendant is unable to pay all of the fines [sic] and costs upon release, the defendant shall, upon release, appear before the District Clerk/County Clerk or its designee and make arrangements to pay the fine and costs at designated intervals."

An October 9, 2023 bill of costs, lists fees and costs in the amount of $375.00, and also states "other fees may be applied at a later date . . . ." A judgment nunc pro tunc signed in December corrects Appellant's jail time credit and reiterates the original judgment's language. A second bill of costs, dated November 8, 2023, carries forward the $375.00 cost balance, but adds court-appointed attorney's fees of $8,760.00.

The trial court ordered Appellant to repay her court-appointed attorney's fees despite the record finding that she was indigent. The record contains no evidence of Appellant's ability to repay those fees. An indigent defendant is entitled to have an attorney appointed for representation in criminal proceedings at no cost. TEX. CODE CRIM. PROC. ANN. art. 1.051(c). Article 26.04(p) presumes an indigent criminal defendant remains indigent absent evidence of a material change in her financial circumstances. *Carr v. State,* No. 01-15-00246-CR, 2016 Tex. App. LEXIS 2134, at *11 (Tex. App.— Houston [1st Dist.] Mar. 1, 2016, no pet.) (mem. op, not designated for publication). When, as here, there is no evidence that a defendant can pay her court-appointed

7

attorney's fees, the proper remedy is to reform the judgment by deleting the provision to repay court-appointed attorney's fees. *Carr*, 2016 Tex. App. LEXIS 2134, at *11. We therefore modify the judgment by deleting the order for Appellant to repay court-appointed attorney's fees. We also modify the November 8 bill of costs to remove the $8,760.00 entry for court-appointed attorney's fees. *See Pruitt v. State,* 646 S.W.3d 879, 883 (Tex. App.—Amarillo 2022, no pet.) (noting an appellate court has authority on direct appeal to modify a bill of costs independent of finding an error in the trial court's judgment).

We next address Appellant's complaint about the order to pay $375.00 in remaining court costs. Article 42.15(a-1) of the Code of Criminal Procedure requires a court to inquire on the record whether a defendant has sufficient resources or income to pay fines and costs. If the defendant does not possess sufficient resources, the trial court must decide if these can be paid later, discharged through community service, waived, or some combination of methods. TEX. CODE CRIM. PROC. ANN. art. 42.15(a-1).

Here, the judgment ordered Appellant pay $375.00 in court costs upon her release on parole or completion of her sentence, but the record does not show the court made an inquiry about her ability to pay, as required. Nevertheless, the trial court delayed the payment obligation until "release on parole or completion of his/her sentence," indicating Appellant's current ability to pay. Prior decisions by this Court have held that it is unnecessary to remand for the trial court to make an on-the-record finding about the ability to pay under these circumstances. *See Stanberry v. State,* No. 07-23-00194-CR, 2024 Tex. App. LEXIS 1066 (Tex. App.—Amarillo Feb. 9, 2024, no pet.) (mem. op., not designated for publication); *Mayo v. State,* No. 07-23-00243-CR, 2024 Tex. App. LEXIS 2396 (Tex. App.—Amarillo April 4, 2024, pet. filed) (op. on reh'g); and *Sparks v. State,* No.

8

07-23-00215-CR, 2024 Tex. App. LEXIS 2574, at *7 (Tex. App.—Amarillo Apr. 12, 2024, no pet.) (mem. op., not designated for publication). We conclude, therefore, the trial court's findings that Appellant did not presently have sufficient resources to immediately pay costs but will in the future satisfy the directive of article 42.15(a-1). Accordingly, we overrule this portion of Appellant's issue.

**Alleged Disproportionality of Sentence**

By her third issue, Appellant argues that her sentence violates the Eighth Amendment's prohibition against cruel and unusual punishment. To preserve this error for appeal, a defendant must make a timely request, objection, or motion to the trial court. *See* TEX. R. APP. P. 33.1(a)(1); *Castaneda v. State,* 135 S.W.3d 719, 723 (Tex. App.—Dallas 2003, no pet.). Constitutional rights, including the right to be free from cruel and unusual punishment, may be waived if not first raised in the trial court. *Russell v. State,* 341 S.W.3d 526, 527 (Tex. App.—Fort Worth 2011, no pet.); *see Castaneda,* 135 S.W.3d at 723. Failure to object to a disproportionate or cruel and unusual sentence at trial or at the first available opportunity thereafter waives the issue for appellate review. *Brooks v. State,* No. 07-23-00110-CR, 2024 Tex. App. LEXIS 833, at *6–7 (Tex. App.—Amarillo Feb. 1, 2024, pet. ref'd) (mem. op., not designated for publication) (citing *Rhoades v. State,* 934 S.W.2d 113, 119 (Tex. Crim. App. 1996) (en banc)).

In this case, Appellant did not object to her sentence on constitutional grounds when it was pronounced, nor did she raise the issue in a motion for new trial. Therefore, Appellant has not preserved her Eighth Amendment complaint for appellate review. Appellant's third issue is overruled.

## Conclusion

Having modified the judgment and bill of costs as noted, we affirm the trial court's judgment as modified.

Lawrence M. Doss
Justice

Do not publish.